**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| | ) |
| **v.** | )     **Criminal Action No. 14-cr-0069 (RMC)** |
| | ) |
| **PHEERAYUTH BURDEN,** | ) |
| | ) |
| **WING-ON LLC,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**OPINION ADMITTING RULE 15(a) DEPOSITION AT CRIMINAL TRIAL**

Over the objections of Defendants Pheerayuth Burden and Wing-On LLC, this Court ruled that the videotaped deposition of former co-defendant Kitibordee Yindeear-Rom could be admitted at their criminal trial. This Opinion explains that decision, announced from the bench during the pretrial conference on August 29, 2016. This opinion pre-dates the conclusion of Defendants' trial so the trial outcome remains unknown and each Defendant is presumed innocent.

## I. BACKGROUND

Kitibordee Yindeear-Rom is a native of Thailand and lives in that country. He came to the United States on a B1/B2 visitor visa in October 2013, not knowing that he was a target of a long-term investigation into an international conspiracy to export defense articles illegally from the United States to Thailand without an export license, in violation of the Arms Export Control Act (AECA), 22 U.S.C. § 2778(b)(2), and the International Trade in Arms Regulations (ITAR), 22 C.F.R. Part 120, _et seq._ Questioned when he arrived, Mr. Yindeear-Rom was arrested in California on his third day in this country, on October 29, 2013.

Mr. Yindeear-Rom was transferred to this jurisdiction, where the complaint against him had been lodged and the arrest warrant issued, and he appeared before a judicial officer on November 14, 2013.  After three defense motions to continue a Preliminary/Detention Hearing and suspensions of the Speedy Trial Act, *see* 11/14/13 Oral Motion to Continue by Kitibordee Yindeear-Rom; 12/2/2013 Oral Motion to Continue; 2/6/14 Oral Motion to Continue by Kitibordee Yindeear-Rom, Mr. Yindeear-Rom and Pheerayuth Burden were both indicted in Case 14-cr-00069 on March 25, 2014.  *See* Indictment [Dkt. 8].  The single count indictment charged both men with conspiracy to violate the AECA by exporting and attempting to export defense articles.

Pheerayuth Burden is a Thai national who resides in California.  His company, Wing-On LLC, is in the freight-forwarding business.  Purchasers can have U.S. goods sent to Wing-On in California, and then repackaged into shipping crates to go by sea or boxes to go by air to other international destinations.  Mr. Burden and Wing-On lawfully forwarded a multitude of U.S. products in this fashion.  According to the Indictment, however, Mr. Burden and Mr. Yindeear-Rom conspired to have U.S.-origin defense articles delivered to Wing-On in California and then re-packaged and shipped to Thailand.  Exporting defense articles without a license is illegal under the AECA and ITAR.

Mr. Burden was arrested in California on May 4, 2014 and first appeared before a judicial officer of this Court on May 7, 2014.  Mr. Yindeear-Rom continued to be detained, but Mr. Burden was released on personal recognizance bond.

Thereafter, the parties' needs to receive, analyze, and understand the wealth of documents involved in this case, many of which needed to be interpreted from Thai into English, caused multiple continuances.[1]

Mr. Yindeear-Rom entered a plea of guilty to a Superseding Information on November 14, 2014.  He pled guilty to one count of conspiracy to export defense articles in violation of AECA and ITAR and to forfeiture.  There was no agreement that Mr. Yindeear-Rom would cooperate with the government in the prosecution of Mr. Burden.  At the same time, Mr. Yindeear-Rom agreed with prosecutors to a Stipulated Request for Judicial Removal.  The entry of such an order would "render[] him permanently inadmissible to the United States."  Stipulated Request [Dkt. 32] ¶ 13.  "Accordingly, defendant Kitibordee Yindeear-Rom, and the United States jointly request[ed] that the Court, after imposing sentence, order that the defendant be removed from the United States so that promptly upon his release from confinement (if any), United States Enforcement and Removal Operations may execute the order of removal according to the applicable laws and regulations."  *Id.* at 3.

Mr. Yindeear-Rom was sentenced by this Court on March 17, 2015 to thirty-six (36) months incarceration with credit for time served since October 2013.

Trial preparation for the charges against Mr. Burden dragged on.  Finally, on April 14, 2015, the Court ordered that trial would begin on November 16, 2015, preceded by scheduled motions due dates and hearings.

A Superseding Indictment was returned on July 16, 2015, naming Mr. Burden and Wing-On LLC as Defendants.  *See* Dkt. 48.  The Superseding Indictment charges both

---

[1]   In part, counsel also wanted to reduce travel expenses for Mr. Burden from California to Washington, D.C.

Defendants with conspiracy to export defense articles willfully without a license in violation of the AECA and ITAR; with specific instances of willfully exporting or attempting to export certain defense articles; and with conspiracy to engage in money laundering.  The Superseding Indictment also contains a forfeiture allegation.

With the addition of a new Defendant and new allegations, it became necessary to continue the trial set for November 2015.  Counsel for Wing-On entered an appearance on September 10, 2015.  At a scheduling conference on September 25, 2015, the trial and all accompanying deadlines were re-set, with trial to begin on April 4, 2016.

All parties then jointly moved, on December 23, 2015, to continue the April 4, 2016 trial date to "any date in September 2016."  Joint Mot. to Continue [Dkt. 61] at 1.  The reason for the request was that an Assistant United States Attorney (AUSA) had learned of "a family/medical matter which [was] scheduled to occur in very close proximity to the scheduled trial date.  The matter [could] []not be rescheduled, and the parties [] discussed the matter and determined that a continuance of the trial [was] in all of the parties' best interest[s]."  *Id.*

The Court expressed its exasperation at the trial delay and suggested that another AUSA be added to the prosecution team so that trial could go forward in April 2016.  The government complied and introduced the new AUSA at a status conference held on January 7, 2016.  However, counsel for Wing-On made a strong plea for a continuance because not all Thai documents had been presented in final translation, which would make it difficult for him to learn the case thoroughly enough to prepare sufficient pre-trial motions on schedule.[2]  The Court

---

[2] "On January 6, 2016, the government [had] produced about 150 translated emails."  Opp'n to Rule 15 Deposition [Dkt. 68] at 4.

acceded and entered an amended scheduling and pretrial order on January 8, 2016, setting trial for September 12, 2016.

### A. Rule 15 Deposition

In light of the delay in the trial to September, on February 10, 2016, the United States filed a Motion for a Deposition Pursuant to Rule 15 of the Federal Rules of Criminal Procedure, asking the Court to authorize the deposition of an important witness "who is expected to be deported from the United States prior to the September 12, 2016 trial date." Mot. to Seal Mot. for Rule 15 Deposition [Dkt. 64] at 1; *see also* Mot. for Rule 15 Deposition [Dkt. 64-2] at 1 ("Specifically, the purpose of this deposition is to preserve the first-hand testimony of prior co-defendant Kitibordee Yindeear-Rom about the significant involvement of defendants Pheerayuth Burden (BURDEN) and Wing-On LLC (WING-ON) in the charged offenses. Mr. Yindeear-Rom is currently in custody in the United States but will be beyond the subpoena power of the United States at the time of the trial scheduled for September 12, 2016, as he will be deported following his release date in June 2016."). The motion added, "[n]otably, the terms of the plea agreement required Mr. Yindeear-Rom, a Thai national, to stipulate to a judicial order of removal following the completion of his sentence, pursuant to 8 U.S.C. Section 1228(c)(5), which was entered by the Court on November 24, 2014." Mot. for Rule 15 Deposition at 3 (citing Plea Agreement [Dkt. 28] and Stipulated Request [Dkt. 32]).

Defendants opposed the motion, arguing that Mr. Yindeear-Rom was not "unavailable" as required by Rule 15 because he was in U.S. custody and would be until at least 30 days after the end of his term in prison because it would take about that long for the deportation process to conclude. Defendants did not then—and do not now—argue that Mr. Yindeear-Rom would not be deported and therefore unavailable for trial. Instead, Defendants

argued that a proper Rule 15 deposition could only occur very close to the time of Mr. Yindeear-Rom's deportation; they also opposed the prosecutor's preference to conduct the deposition in March 2016 so that Mr. Yindeear-Rom might earn a Rule 35 motion to reduce his sentence.

Distinguishing between *taking* at Rule 15 deposition and *admitting* it at trial, the government replied that "[i]f and when the government seeks to admit the deposition at trial, and if the defendants can identify a material question or subject area that could have been explored but was not, because the deposition was conducted at this time, curative measures can be taken to safeguard such concerns to include redactions or stipulations or limitations on the use of the deposition." Reply [Dkt. 72] at 3. In addition, the government described Mr. Yindeear-Rom as a "material," but not a "key" witness, attributing the latter to the investigators and documents.

The Court granted the Rule 15 motion, finding that "Mr. Yindeear-Rom could provide testimony that is material; he will be unavailable to testify in September 2016 if deported before then; and there is no procedural barricade to taking his videotaped deposition under Rule 15 as proposed." Mem. Op. [Dkt. 74] at 4. In addition, the Court found that the use of a videotaped deposition taken in court, before the trial judge and including the presence of Mr. Burden and cross examination by both defense lawyers, while a substitute for Mr. Yindeear-Rom's trial presence, was nonetheless a very good substitute that would allow the jury to observe his demeanor and preserve the Defendants' rights to confront witnesses against them. "In addition, if Mr. Yindeear-Rom is *not* [deported] by September 2016, the government fully intends to have him testify in person." *Id.* at 4-5 (emphasis in original). Therefore, the Court found that there were exceptional circumstances and it would be in the interest of justice to allow the deposition to be taken. *See id*. at 5; *see also* Fed. R. Crim. P. 15(a)(1).

The deposition was scheduled to take place in the courtroom, before the Court and all parties and counsel, on March 23, 2016. *See* 3/9/16 Minute Order. Beginning on the 23rd of March with direct examination, the deposition continued on March 24, March 30, and April 4, 2016, when it was concluded. Counsel for Defendants Burden and Wing-On were given full flight to question Mr. Yindeear-Rom for hours and days without curb or limit. Mr. Burden was in attendance throughout.

Thereafter, the United States filed a Rule 35 motion to reduce Mr. Yindeear-Rom's sentence, which was granted. *See* Am. Judgment [Dkt. 88]. On an unknown date in April 2016, Mr. Yindeear-Rom was deported from the United States and transported to Thailand.

**B. Attempts to Procure Mr. Yindeear-Rom's Attendance**

After Mr. Yindeear-Rom was deported, the government attempted to contact him through his counsel. The government contacted counsel via telephone and letter on July 11 and 12, 2016. *See* Mot. to Admit, Ex. 1 [Dkt. 99-1]. The letter included a subpoena for Mr. Yindeear-Rom's testimony at trial. *See id*. The government assured Mr. Yindeear-Rom's counsel that "the United States has a strong interest in having Mr. Yindeear-Rom testify in person, and will pay for Mr. Yindeear-Rom's expenses for travel to, and stay in, the United States, including but not limited to round-trip airfare, transportation, room, board, and per diem witness fee." *Id*. In order to faciliatate his entry into the United States, the government agreed to assist Mr. Yindeear-Rom in obtaining a visa to return to the United States. *See id*. Counsel for Mr. Yindeear-Rom forwarded the letter and subpoena to Mr. Yindeear-Rom in Thailand, but was unable to confirm receipt or make any representations about Mr. Yindeear-Rom's willingness to testify.

The government also sent the letter and subpoena directly to Mr. Yindeear-Rom's last known email and physical address in Thailand, which advised Mr. Yindeear-Rom of the same payment and assistance in entry that the government was willing to undertake to obtain his live testimony at trial. *See id.*, Ex. 2 [Dkt. 99-2].  By the date of the pretrial conference, the government had received no response to either the email or physical letter sent to Mr. Yindeear-Rom.  However, the government was able to confirm that the physical letter was delivered on July 29, 2016 and signed for by "K. Yen," which the government believes to be Mr. Yindeear-Rom.  *Id.*, Ex. 3 [Dkt. 99-3].

The government also pursued efforts to contact Mr. Yindeear-Rom in person through law enforcement personnel working in Bangkok, Thailand and through social media websites that he might use.  Department of Homeland Security (DHS) personnel in Thailand made contact with Mr. Yindeear-Rom via telephone and explained the government's request for his live testimony at trial.  *See* Reply, Ex. 4 [Dkt. 109-1].  Mr. Yindeear-Rom told the DHS representative that he knew the government was trying to contact him and he had received the email and letter, but he "had no desire to travel to the United States to cooperate in any way."  *Id.*

On August 5, 2016, the United States moved to admit the Rule 15 deposition of Mr. Yindeear-Rom.  *See* Mot. to Admit [Dkt. 99].  Defendants' opposed.  *See* Opp'n [Dkt. 107].  The Court heard oral argument on the motion during the two-day pretrial conference held on August 22 and 29, 2016 and ruled from the bench to admit Mr. Yindeear-Rom's deposition at trial.  *See* Order [Dkt. 115].

### III.  APPLICABLE LAW

Two separate but connected legal sources must be analyzed before a deposition can be allowed into evidence at a criminal trial.  First is the Sixth Amendment to the U.S. Constitution, which gives every criminal defendant the right "to be confronted with the witnesses

against him . . . ."  U.S. Const., amend. VI.  Second are the Federal Rules of Evidence, which

define both inadmissible hearsay and provide the right to obtain admissible evidence from a

person whose information is "material" to the case but who will be "unavailable" at the time of

trial.  Fed. R. Evid. 804(a), (b).

### A.   Confrontation Clause

"The primary object of the [Confrontation Clause] . . . was to prevent depositions

or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and

cross-examination of the witness, in which the accused has an opportunity, not only of testing the

recollection and sifting the conscience of the witness, but of compelling him to stand face to face

with the jury in order that they may look at him, and judge by his demeanor upon the stand and

the manner in which he gives his testimony whether he is worthy of belief."  *Mattox v. United

States*, 156 U.S. 237, 242-43 (1895).  "[T]here has traditionally been an exception to the

confrontation requirement where a witness is unavailable and has given testimony at previous

judicial proceedings against the same defendant which was subject to cross-examination by that

defendant."  *Barber v. Page*, 390 U.S. 719, 722 (1968) (citing *Mattox*, in which testimony from

first trial admitted at retrial because witness had died).  "This exception has been explained as

arising from necessity and has been justified on the ground that the right of cross-examination

initially afforded provides substantial compliance with the purposes behind the confrontation

requirement."  *Id.*

While in *Mattox* the witness was unavailable due to death, the missing witness in

*Barber*, named Woods, was being held in a federal prison in Texas, outside Oklahoma where the

trial was to take place.  The testimony in question came from Mr. Woods during a preliminary

hearing when both men were jointly charged with armed robbery and both were represented by

the same counsel, Mr. Parks.  "During course of the hearing, Woods agreed to waive his

privilege against self-incrimination.  Parks then withdrew as Woods' attorney but continued to

represent [Mr. Barber]."  *Id.* 720.  Mr. Woods was not cross-examined by Mr. Parks.  By the

time of the trial, Mr. Woods was incarcerated in a federal penitentiary in Texarkana, Texas.  *See*

*id.*  Oklahoma made no effort to produce Mr. Woods for trial and argued that he was legally

unavailable because he was outside the state's jurisdiction.  *See id.*  Mr. Barber objected, but the

court admitted the prior testimony and Mr. Barber was ultimately convicted.  *Id*. at 720-21.  The

Supreme Court reversed the conviction because "a witness is not 'unavailable' for purposes of

the foregoing exception to the confrontation requirement unless the prosecutorial authorities

have made a good-faith effort to obtain his presence at trial."  *Id.* at 724-25.

      The Supreme Court considered the use of prior testimony again in *California v.*

*Green*, 399 U.S. 149 (1970), in which the Court ruled that testimony by Melvin Porter at the

preliminary hearing was admissible at the trial of John Green.  *See id*. at 151.  Mr. Porter, a

teenage drug dealer, testified at a preliminary hearing that Mr. Green was his marijuana supplier.

At trial, Mr. Porter appeared and was sworn in as a witness, questioned by the State, and cross-

examined by Mr. Green's counsel.  *See id.* at 167.  The State also relied on Mr. Porter's prior

testimony to prove its case against Mr. Green.  *See id*. at 168.  The Court held that:

> Porter's preliminary hearing testimony was admissible as far as the
> Constitution is concerned wholly apart from the question of whether
> [Mr. Green] had an effective opportunity for confrontation at the
> subsequent trial [at which Mr. Porter was a witness].  For Porter's
> statement at the preliminary hearing had already been given under
> circumstances closely approximating those that surround the typical
> trial.  Porter was under oath; [Mr. Green] was represented by counsel
> . . .; [Mr. Green] had every opportunity to cross-examine Porter as
> to his statement; and the proceedings were conducted before a
> judicial tribunal, equipped to provide a judicial record of the
> hearings.  Under these circumstances, Porter's statement would, we
> think, have been admissible at trial even in Porter's absence if Porter

> had been actually unavailable, despite good-faith efforts of the State
> to produce him.

*Id.* at 165.  "Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony."  *Id*. at 167-68.

### B.  Federal Rule of Evidence 804

Federal Rule of Evidence 804 details the requirements and exceptions for admitting testimony of unavailable declarants.  First, Rule 804 identifies the requirements for finding a witness "unavailable."  As relevant here, the Rule states:

> A declarant is considered to be unavailable as a witness if the
> declarant:
>
> . . .
>
> (5) is absent from the trial or hearing and the statement's proponent
> has not been able, by process or other reasonable means, to procure:
>
> (A) the declarant's attendance, in the case of a hearsay exception
> under Rule 804(b)(1) or (6).
>
> . . .
>
> But this subdivision (a) does not apply if the statement's proponent
> procured or wrongfully caused the declarant's unavailability as a
> witness in order to prevent the declarant from attending or testifying.

Fed. R. Evid. 804(a).  Rule 804 goes on to explain the exception to the rule against hearsay, which may be used to admit prior testimony or statements of an unavailable witness.  The Rule states:

> The following are not excluded by the rule against hearsay if the
> declarant is unavailable as a witness:
>
> (1) Former Testimony.  Testimony that:

      (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

      (B) is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b).

### C.  Availability of the Witness

      Combined with the constitutional pressures of the Confrontation Clause, Rule 804 has caused some courts to examine sternly whether the government as prosecutor acted in good faith to procure a witness's presence by reasonable means, or wrongfully caused a declarant's absence from a criminal trial.

      The D.C. Circuit has only addressed these issues twice.  In *United States v. Lynch*, 499 F.2d 1011 (D.C. Cir. 1974), the Circuit found that the government failed to establish the witness was unavailable and that the District Court erred in admitting testimony from the preliminary hearing.  *See id*. at 1024.  The witness had been in court on Friday of the previous week, but failed to return on Monday.  *See id*. at 1023.  The prosecution did not represent that the witness was unwilling to testify and had made insufficient attempts to locate the witness.  *See id*. at 1024.  Although police officers visited the witness's grandmother's house and a friend's apartment (where she was hiding and refused to answer the Marshals' knocks on the door), they never checked with area hospitals or her employer, and admitted to limited efforts to locate her because of multiple demonstrations in Washington, D.C. that were otherwise keeping the police busy.  *See id*. at 1023-24.  The Circuit determined that "it [was] difficult to believe that if the preliminary hearing testimony of this critical witness were not available, the prosecution would have abandoned its efforts at [the same] point to locate [the witness]" and the earlier testimony should not have been admitted.  *Id*. at 1024.

In *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), the Circuit held that the defendant was not entitled to take foreign depositions of those persons who were alleged to have paid bribes to him, as no "exceptional circumstances" were demonstrated because the witnesses were expected to testify at trial. *Id*. at 1125. It noted that "[t]he purpose of Rule 15(a) is to preserve testimony for trial, not to 'provide a method for pretrial discovery.'" *Id.* at 1124 (quoting *United States v. Troutman*, 814 F.2d 1428, 1453 (10th Cir. 1987)).

In *United States v. Allie*, 978 F.2d 1401 (5th Cir. 1992), the Fifth Circuit agreed that pre-trial depositions could be taken of alien witnesses who were going to be deported before trial. *See id.* at 1045. In that case, a standing order in the district court mandated the release of detained witnesses within 60 days and, with the added factors of the aliens' illegal presence in the United States, lack of ties to the area, and the necessity of the testimony, the Circuit agreed that exceptional circumstances had been established. *See id.* Efforts thereafter by the government to obtain the witnesses' attendance were reasonable and in good faith, justifying the admission of prior testimony. *See id*. at 1407. The government's efforts included the following:

> giving the witnesses the option of remaining in the United States with work permits, telling the witnesses about the payment of witness fees and travel cost reimbursement, giving the witnesses a subpoena and a letter to facilitate their reentry into the United States, calling the witnesses in Mexico, getting the witnesses' repeated assurances that they would return, apprising the border inspectors of the witnesses' expected arrival and issuing checks to be given to the witnesses upon their reentry in to the United States.

*Id*. In contrast, the Fifth Circuit found insufficient efforts to obtain the return of an alien when prosecutors first tried to reach him in Mexico only eight days before the trial. *United States v. Tirado-Tirado*, 563 F.3d 117, 124 (5th Cir. 2009). The Circuit therefore found admission of the videotaped deposition violated the Confrontation Clause because the witness was not "unavailable." *Id*. at 125.

According to the First Circuit, when "[t]he government did not make as vigorous an attempt to secure the presence of the witness as it would have made if it did not have the prior recorded testimony," Rule 804(a)(5) was not satisfied. *United States v. Mann*, 590 F.2d 361, 367 (1st Cir. 1978). The witness in *Mann*, a 17-year-old girl from Australia, acted as a drug mule transporting cocaine for the defendant. *See id*. at 363-64. Without any indication of personal hardship or necessity requiring her presence elsewhere, she was deposed and allowed to depart. *See id*. The trial court admitted her testimony at trial, but the First Circuit reversed, finding the District Court erred in allowing the Rule 15 deposition and in admitting the deposition at trial. *See id*. at 365-68. It held that "[i]mplicit . . . in the duty to use reasonable means to procure the presence of an absent witness is the duty to use reasonable means to prevent a present witness from becoming absent." *Id.* at 368.

The District of Maine has recently issued an opinion refusing to admit the videotaped deposition of an illegal alien who was deported when the Department of Homeland Security "denied [the Assistant United States Attorney's] request for deferral because of [the witness's] recent and serious criminal conviction." *United States v. French*, Case No. 12-cr-160, 2014 WL 34802, *1 (D. Me. Jan. 6, 2014) (internal quotation and citation omitted). Because the government held the witness on a material witness warrant only long enough to take his deposition—and did not attempt to hold him longer—the court found a failure to use "'reasonable means to prevent a present witness from becoming absent.'" *Id.* at *8-10 (quoting Mann, 590 F.2d at 368).

A judge on this Bench, however, came to a different conclusion when permitting the videotaped deposition of a deportable alien in *United States v. Vo*, 53 F. Supp. 3d 77 (D.D.C. 2014). The case involved a criminal conspiracy to commit visa fraud. *See id.* at 80. Truc Thanh

Huynh was originally a co-defendant of Binh Vo but she had entered a plea of guilty and was to

be released from the Bureau of Prisons in early July 2014.  *See id*.  Binh Vo's trial would not

commence until mid-September 2014.  *See id*.  When the government sought to depose Ms.

Huynh, both she and Mr. Vo objected.  *See id*.  After considering their objections, the court

ordered the deposition, finding that "Huynh will be unavailable to testify at trial and that her

testimony would be material."  *See id*. at 85.  Although the court reserved the question of the

admissibility of the deposition at trial, it went on to evaluate "Next Steps," as Ms. Huynh was set

to be released prior to trial.  *Id.*  The court found it would "accomplish little" to order Deferred

Action on Ms. Huynh's deportation.  *Id*.  "A Deferred Action is 'an act of administrative

convenience to the government which gives some cases lower priority,'" allowing Immigration

and Customs Enforcement (ICE) as a matter of discretion to postpone a removal.  *Id*. (quoting 8

C.F.R. § 274a.12(c)(14)).  Despite the government's ability to request a Deferred Action, the

court found it unnecessary, explaining that:

> it is far from clear that pursuing a Deferred Action is in the interests
> of justice.  If ICE were to grant Huynh a Deferred Action, her
> removal proceedings would not even *begin* until after her
> deposition, meaning that in all likelihood she would still be in the
> country during Vo's trial in September.  The better course is for ICE
> to begin removal proceedings, subject only to a bench warrant from
> this Court acting as a detainer (to expire once her deposition is
> complete), in the hope that Huynh can return to Vietnam shortly
> after her deposition is taken.

*Id.*  The court, therefore, facilitated the witness's return to Vietnam after the deposition, but

before she could testify at trial.[3]

---

[3] A number of other circuit and district courts have considered the availability of witnesses and admissibility of prior statements.  *See, e.g.*, *United States v. Tirado-Tirado*, 563 F.3d 117, 123-25 (5th Cir. 2009) (finding government efforts to procure witness were not reasonable when government failed to make any concrete arrangements prior to his deportation and delayed attempting to contact the witness until shortly before trial); *United States v. Yida*, 498 F.3d 945,

## IV.  ANALYSIS

This Court ruled that the deposition of Mr. Yindeear-Rom was admissible at the trial of Mr. Burden and Wing-On because he was unavailable at trial and Defendants had a thorough opportunity to cross examine Mr. Yindeear-Rom during the four-day Rule 15 deposition.

### A.  Confrontation Clause

The Court takes its cue from *California v. Green*.  In that case, the Supreme Court found that witness testimony could have been admitted at trial, were he absent, because of the circumstances under which it was taken:  the witness was under oath; the criminal defendants were present and separately represented by counsel; the criminal defendants could and did cross examine the witness; and his testimony was given before a judicial tribunal that provided a judicial record.  399 U.S. at 165.  Each of these points was adopted for the testimony of Mr. Yindeear-Rom, making it "admissible as far as the Constitution is concerned."  *Id.*  During the Rule 15 deposition, Mr. Yindeear-Rom was under oath, Mr. Burden was present (for himself and as the owner and representative of Wing-On); both Defendants were represented by counsel and both cross-examined the witness; and the deposition took place in the courtroom and on the record.  In addition, the testimony was videotaped so the jury will be able to observe Mr.

---

950-58 (9th Cir. 2007) (finding government efforts to procure witness were not reasonable when government allowed a material witness to be released and deported between the first trial, which ended in a mistrial, and the second trial, stressing the benefits of live testimony and the government's failure to attempt even a videotaped deposition of the witness); *United States v. Huang*, 827 F. Supp. 945, 949-50 (S.D.N.Y. 1993) (finding witness unavailable when witness was detained as material witness for a Rule 15 deposition and then deported; before deportation the witness was provided with subpoena and instructions for reentry and reimbursement, but would not return for trial); *United States v. Eufracio-Torres*, 890 F.2d 266, 270-71 (10th Cir. 1989) (same); *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir. 1980) (finding witnesses unavailable where they were Italian citizens, never located in the United States and therefore outside the subpoena power of the court).

Yindeear-Rom as he testified.  After hours and hours of cross examination, Defendants' rights to confront Mr. Yindeear-Rom were fully satisfied.  Defendants do not argue otherwise.

The government also made good-faith efforts to procure Mr. Yindeear-Rom's presence at trial in September 2016.  The government attempted to contact Mr. Yindeear-Rom and issue a subpoena both through his counsel and through direct email or mail communications. When those efforts proved ineffective, the government enlisted DHS employees located in Thailand to attempt to contact Mr. Yindeear-Rom in person.  The DHS representative was able to speak with Mr. Yindeear-Rom via telephone and learned he was aware of the trial and the government's attempts to procure his testimony, but that he had no desire to return to the United States to testify.  Defendants do not dispute the government's account of their efforts to obtain the in-person testimony of Mr. Yindeear-Rom.

The error Defendants identify is the government's failure to keep Mr. Yindeear-Rom in the United States after his release from three years' incarceration.  *See* Opp'n at 6-11. They posit that the government could have detained Mr. Yindeear-Rom as a material witness or released him to the community with a temporary work permit.  *See id*. at 10-11.

Defendants overlook a few salient facts:  (1) Mr. Yindeear-Rom was in this country for three days when he was arrested and jailed for three years; (2) by the terms of his 2014 plea agreement, the government and Mr. Yindeear-Rom had stipulated to a judicial order of removal upon his release; (3) Mr. Yindeear-Rom served almost his entire sentence because an alien subject to deportation is not eligible for early release to a half-way house; (4) had counsel for Wing-On not been so persuasive about his need for more time to prepare for trial, Mr. Yindeear-Rom would have testified in person at the original trial date in April 2016; and (5) had Mr. Yindeear-Rom not been offered a cooperation agreement in return for an early release from

prison, he could have waited until June 9, 2016 to be released, and still have been deported before the September 2016 trial.

Additionally, the vehemence with which Mr. Yindeear-Rom refused to speak with the prosecutors as they attempted to contact him and secure his return for trial is demonstrative of his unwillingness to appear for trial and likely unwillingness to stay in the United States for trial after his release from prison. "Evidence that a witness specifically refuses to testify at trial is 'potent proof of unavailability required for purposes of Rule 15(a).'" *United States v Warren*, 713 F. Supp. 2d 1 (D.D.C. 2010) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)). The Court also finds, consisted with *Vo*, that it would not have been in the interests of justice to jail Mr. Yindeear-Rom as a material witness when he had just completed his sentence at the Bureau of Prisons. *See Vo*, 53 F. Supp. 3d at 85.

Defendants further argue that they would not have sought a continuance of the trial from April to September 2016 if they had known that the government was going to present Mr. Yindeear-Rom as a videotaped witness. Defense counsel insisted that, despite the original protests for more time to prepare, counsel for Wing-On could have been prepared for trial in April, if need be, in order to have a live witness. Hindsight makes everything seem easier. The motion to postpone the trial until September 2016 was heard and granted on January 7, 2016. The government did not meet with Mr. Yindeear-Rom to discuss the possibility of his testimony until much later in that month. As of January 7, 2016, the government had no obligation to forecast that it would be seeking Mr. Yindeear-Rom's cooperation or predict whether he would agree.

The Court finds that the government's efforts to procure Mr. Yindeear-Rom's live testimony at trial were reasonable and conducted in good faith. The Court does not find that

failing to request a material witness warrant or to offer to allow Mr. Yindeear-Rom to remain in the United States pending trial affect the reasonableness of the government's efforts. "The law does not require the doing of a futile act," *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), and, based on Mr. Yindeear-Rom's eagerness to return to Thailand, any attempts to persuade him to remain in the United States would almost certainly have been futile.[4]

The Court concludes that the Sixth Amendment Confrontation Clause does not preclude admitting the deposition transcript into evidence at Defendants' criminal trial.

## B. Federal Rule of Evidence 804

The Court also considers the strictures of Rule 804(a), which allows admission of prior testimony when the declarant is absent and he cannot be procured "by process or other reasonable means." Fed. R. Evid. 804(a)(5). Critically, the Rule adds that "subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability of a witness *in order to prevent the declarant from attending or testifying.*" *Id.* (emphasis added). According to these terms, a proponent has to "wrongfully cause[] the declarant's unavailability" with the purpose or intention of preventing in-person testimony. No such intent on the government's part is shown in this record or argued by Defendants.

To the contrary, this Court finds that Mr. Yindeear-Rom is unavailable and that the government attempted to procure his live testimony via process and other reasonable means.

---

[4] The Court notes that other circuit and district courts have addressed similar issues and specifically differentiates this case from *Yida* and *Tirado-Tirado*. In *Yida*, the court focused on the inadequacy of a transcript of testimony at the first trial, stressing the need for a jury to see the witness. *See* 498 F.3d at 950-51. The witness here was deposed on video and, therefore, the jury will be able to view his physical reactions to questions and determine his credibility. This case can also be differentiated from *Tirado-Tirado* as the government in this case did not wait until shortly before trial to attempt to contact the witness and attempted live contact with the witness in his country of residence. *See* 563 F.3d at 123-25.

The Court's analysis of the question of availability in the Confrontation Clause context applies equally to Rule 804 and will not be repeated here.

The government's efforts to procure Mr. Yindeear-Rom's live testimony satisfy the plain requirements, purpose, and spirit of Rule 804(a).  Mr. Yindeear-Rom is beyond the subpoena power of the Court and his videotaped testimony is available.  The government has made good faith efforts to persuade Mr. Yindeear-Rom to return and he has clearly refused.  The government, therefore satisfies the requirement to show Mr. Yindeear-Rom is unavailable under Rule 804(a).  The deposition also meets the requirements for admissibility under Rule 804(b) because the testimony was given at a "lawful deposition" conducted in the presence of this Court and Mr. Burden and Wing On were present and represented by counsel and had "an opportunity and similar motive to develop [the testimony] by . . . cross- [] examination."  Fed. R. Evid. 804(b)(1).

## IV.  CONCLUSION

Upon considering the briefs, oral arguments, and the entire record, the Court concluded at the pretrial conference that admission of the videotaped testimony was appropriate and necessary.

Date: September 20, 2016

                                       /s/
ROSEMARY M. COLLYER
United States District Judge