UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| v. | ) ) | Criminal Action No. 14-cr-0069 (RMC) |
| PHEERAYUTH BURDEN, | ) ) ) | |
| WING-ON LLC, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

After a trial lasting 13 days, Pheerayuth Burden and his wholly-owned business, Wing-On LLC, were convicted on all counts, *i.e.*, Conspiracy to Violate the Arms Export Control Act and the International Traffic in Arms Regulations and to Defraud the United States; Unlawful Export of Defense Articles from the United States; and Conspiracy to Launder Monetary Instruments. *See* Verdict Form [Dkt. 124].

Mr. Burden is a native of Thailand lawfully in the United States and was conducting an export business specializing in the transportation of U.S. goods to Thailand from California, through his business Wing-On. He was originally charged with co-Defendant Kitibordee Yindeear-Rom, a Thai native living in Thailand with whom Mr. Burden allegedly conspired to export gun parts on the Munitions List without a license from the U.S. Department of State (USDS). Defendant Wing-On LLC was incorporated in California and operates from that State. It is wholly-owned by Mr. Burden.

Mr. Yindeear-Rom was a customer of Mr. Burden and Wing-On who imported many goods to Thailand, including some small gun parts. The gun parts were subject to the

1

Arms Export Control Act (AECA), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations (ITAR), 22 C.F.R. §§ 120-130, but neither Mr. Yindeear-Rom nor Mr. Burden or Wing-On had the required license to ship such goods outside the United States.  Thus developed the criminal actions for which all three Defendants were convicted.

Mr. Yindeear-Rom entered a guilty plea in November 2014, was sentenced to thirty-six (36) months' incarceration, served close to three years in prison in the United States, and was subsequently deported to Thailand.  Co-Defendants Burden and Wing-On elected to go to trial and were convicted on all counts.  The Court held sentencing arguments on February 10 and 16, 2017.

## I.  PHEERAYUTH BURDEN

At sentencing for Mr. Burden, the Court agreed with the Presentence Investigation Report (PSR) and found that the adjusted offense level was 28, his criminal history category was I, and the recommended sentencing range in the United States Sentencing Guidelines (USSG or Guidelines) was, therefore, 78 to 97 months.  The offense level included an increase of two levels because Mr. Burden was convicted of money laundering under 18 U.S.C. § 1956.

Mr. Burden argued for a minor role adjustment under USSG § 3B1.2, contending that Wing-On and Mr. Burden were mere conduits for Mr. Yindeear-Rom's shipment of gun parts.  The Court rejected the argument that Mr. Burden was a patsy for criminal conduct directed by Mr. Yindeear-Rom from Thailand.  To the contrary, the two co-conspirators were equals and none of these crimes could or would have occurred without Mr. Burden's personal involvement.

At sentencing, the Government strongly argued for a Guidelines sentence. Mr. Burden's counsel sought a 12-month reduction from whatever sentence the Court felt appropriate because of the effect of Mr. Burden's immigration status on his housing by the Bureau of Prisons (BOP) and his ability to access education and training programs offered in prison, such as minimum security detention, and potential early release.[1]

While the Court agreed with the Government that illegally trading in arms is a serious crime, it also noted that the actual parts shipped were extremely small and could not be used to assemble a complete weapon. Therefore, the parts themselves were not individually dangerous. The reasons such purchases were made by persons in Thailand had no relevance to the intentional criminal conduct.

The Court varied downward from the Guidelines pursuant to 18 U.S.C. § 3553(a) in sentencing Mr. Burden and imposed a sentence of fifty-five (55) months' incarceration plus forfeiture.[2] It noted that Mr. Burden had no previous criminal conduct of any kind; that his prior history and age (approximately 50 years old) made it highly unlikely that he would re-offend; that a Guidelines sentence was not necessary to deter Mr. Burden or promote his respect for the law; and that it was appropriate to avoid disparities in sentencing between Mr. Yindeear-Rom and Mr. Burden. Thus, while Mr. Yindeear-Rom accepted responsibility early and received a lesser sentence, Mr. Burden and he were equally guilty of the criminal conduct and Mr. Burden's sentence could not be significantly greater for the same conduct. In addition, the Court found that Mr. Burden's criminal conduct destroyed his business and his life in the United States,

---

[1] Mr. Burden is a lawful permanent resident, but may be subject to deportation due to the felony convictions in this case.

[2] Mr. Burden and Wing-On were ordered to forfeit a combined $105,112.00.

which he had worked so assiduously and lawfully to develop; that his deportation at the end of his sentence is likely; and that a Guidelines sentence was not necessary to deter him from future crimes.

## II.  WING-ON LLC

Since Wing-On is a business and not a person, there was no question of incarceration for its criminal behavior.  The Court agreed with the PSR and found an offense level of 28, a base fine of $6.3 million, a culpability level of 5, and a fine range of $6.3 million to $12.6 million under the USSG.  The Court varied downward from the Guidelines pursuant to 18 U.S.C. § 3553(a) in sentencing Wing-On.

First, the Guidelines range for a fine was well above the $2 million fine that is the statutory maximum for the crimes of conviction.  Second, the PSR reported that Wing-On profited in the amount of $66,000 from its export of prohibited goods, which was significantly below the statutory maximum fine and significantly lessened the degree of criminal conduct.  The amount of money Wing-On received from the criminal conduct was also a small fraction of Wing-On's total gross income.

Third, Wing-On is no longer in business.  Defense counsel projected a probable bankruptcy filing and dissolution of the corporation.  With Wing-On out of business and facing bankruptcy, the Court found no need to deter the corporation from further criminal conduct, as it will engage in no further conduct as a trans-shipper, legal or illegal.  Additionally, bankruptcy cannot discharge a criminal fine and Wing-On has no assets to pay it.  It is likely, therefore, that any fine imposed on Wing-On will become a debt owed by Mr. Burden, the sole owner of the business.  Yet Mr. Burden has been separately sentenced for his role in the crimes.

Notwithstanding these reasons for a variance, the Court rejected Wing-On's request that no fine be imposed at all. Reviewing the factors in 18 U.S.C. § 3553(a), the Court found that a fine was appropriate to promote respect for the law and to deter other businesses from the illegal arms trade, at whatever level, even if the likelihood of Wing-On's further criminal conduct was very low. Finally, the Court noted that Wing-On was not only convicted of conspiracy and ITAR violations, but also found guilty of money laundering. The multiple convictions and the duration of the criminal conduct required a fine of some significance. That the fine might be transferred to Mr. Burden was not a reason to withhold a fine inasmuch as Mr. Burden was the sole person in charge and decision maker for Wing-On.

For these reasons, Wing-On LLC was fined $250,000 for its crimes.

### III.  CONCLUSION

This Memorandum Opinion supplements the reasons given on the record on February 10 and 16, 2017.


Date: April 4, 2017                                         /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge